UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHAD SWATZELL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:18-cv-01336 |
| TENNESSEE BOARD OF PAROLE, | ) ) | CHIEF JUDGE CRENSHAW |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Chad Swatzell, an inmate of the Northeast Correctional Complex in Mountain City, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the Tennessee Board of Parole, alleging violations of his civil and constitutional rights. (Doc. No. 1).

The Complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. PLRA Screening Standard

Under the PLRA, the Court must conduct an initial review of any civil Complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement. 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the Complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those

1

statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In reviewing the Complaint to determine whether it states a plausible claim, "a district court must (1) view the Complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## II. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, to state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

### III. Alleged Facts

According to the Complaint, Plaintiff is a state prisoner in the custody of the Tennessee Department of Correction. He is serving a sentence for three felony convictions, all of which occurred on August 29, 1988. At the time of the offense, Plaintiff was sixteen years old. He had no prior record.

Plaintiff has been incarcerated since August 29, 1988, during which time he has never been issued a disciplinary report. During his over thirty years in prison, Plaintiff has worked at various prison jobs and earned certificates in electrical repair, culinary arts, and building trades. Plaintiff is currently participating in a masonry class.

The Complaint alleges that, since the time of Plaintiff's offenses in August of 1988, Defendant has adopted a practice of requiring longer prison terms for murder 1-life sentenced offenders who have victim-related opposition to parole; Defendant has adopted a practice and policy of requiring longer prison terms for murder 1- life sentenced juvenile offenders as compared to similarly situated adult offenders; and Defendant has adopted and implemented changes in the parole board's decision-making criteria used to determine which offenders are granted parole.

Plaintiff has been eligible for parole release under Tennessee law since 2013. He first went before the parole board in May 2013. During this appearance, the board granted a six-month continuance to obtain a psychological evaluation and an additional six-month continuance for obtaining more information about the offenses. Plaintiff's parole was opposed by the victim's daughter, the county sheriff, and former county sheriff. Parole was denied. At Plaintiff's third, fourth, and fifth appearances before the parole board, the board declined parole for the same stated reason—release at this time would depreciate the seriousness of the offense or promote disrespect

of the law. The Complaint alleges, however, that the board's stated reason is not credible or sustainable given the nature of the board's actions in other cases.

According to the Complaint, the board has violated Plaintiff's rights under the Ex Post Facto Clause of the United States Constitution by the retroactive application to Plaintiff of parole standards that have significantly increased his period of incarceration; has violated Plaintiff's rights under the Eighth Amendment to the United States Constitution by imposing harsher punishment on Plaintiff, a juvenile offender, compared to similarly situated adult offenders; and has violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by the discriminatory treatment, denial of parole, and prolonged period of imprisonment the board has imposed on Plaintiff as a juvenile offender and an offender with victim's family parole opposition.

The Complaint asks the Court to grant Plaintiff a parole hearing under the standards in effect at the time of his offense and a hearing in compliance with all constitutional mandates. (Doc. No. 1 at 12-18.)

## IV. Analysis

### A. Ex Post Facto Claim

First, the Complaint alleges that Defendant has violated Plaintiff's rights under the Ex Post Facto Clause of the United States Constitution by the retroactive application to Plaintiff of parole standards that have significantly increased his period of incarceration. The Complaint cites to statutory changes and "[r]evisions to Board of Parole rules and regulation, including policy changes from those in effect in August of 1988 to the current version." (Doc. No. 1 at 16). Article I, Section 10 of the United States Constitution prohibits the States from passing any ex post facto law. U.S. Const. art. 10, § 10. The Ex Post Facto Clause incorporates "a term of art with an

established meaning at the time of the framing of the Constitution." Collins v. Youngblood, 497 U.S. 37, 41 (1990) (citations omitted). As the Supreme Court has explained, the Ex Post Facto Clause ensures that "[l]egislatures may not retroactively alter the definitions of crimes or increase the punishment for criminal acts." Id. at 43.

"Parole eligibility is part of the law annexed to an offense when committed; therefore legislative action which constricts parole eligibility by modifying requirements for such eligibility may violate the ex post facto clause." Ritchie v. Tenn. Bd. of Prob. and Parole, No. 1:10-CV-203, 2012 WL 222923, at *3 (E.D. Tenn. Jan. 25, 2012) (citing Weaver v. Graham, 450 U.S. 24, 32-33 (1981)). If, by its own terms, the challenged statute does not reveal a significant risk of enlarging the punishment, the prisoner must show that, as applied to his own sentencing, the statute created such a risk. Garner v. Jones, 529 U.S. 244, 255 (2000). In making this showing, a prisoner cannot rely on mere speculation or supposition as to the increase in punishment, but must produce actual evidence of the detrimental impact. Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995); Teague v. Cox, No. 1:06-CV-91, 2008 WL 2518699, at *5 (E.D. Tenn. June 19, 2008) (requiring a prisoner "'to proffer actual evidence, rather than mere speculation, regarding the retroactive applications' disadvantageous effect'") (quoting Dyer v. Bowlen, 465 F.3d 280, 285 (6th Cir. 2006)).

"[N]ot every change in the law raises ex post facto concerns." Snodgrass v. Robinson, 512 F.3d 999, 1002 (8th Cir. 2008). The issue is not "on whether a legislative change produces some ambiguous sort of disadvantage . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Morales, 514 U.S. at 506 n.3 (internal quotation marks omitted); see also Michael v. Ghee, 498 F.3d 372, 384 (6th Cir. 2007) ("The relevant inquiry . . . then, is whether retroactive application of the 1998 Ohio Guidelines

creates a sufficient risk of increasing the measure of punishment attached to the covered crimes.") (citing Garner, 529 U.S. at 250; Dyer, 465 F.3d at 285). A court considering such a challenge must compare the parole statutes in effect at the time of the commission of the covered crime with the retrospectively-applied version of the statute, Foster v. Booker, 595 F.3d 353, 362 (6th Cir. 2010), to determine whether the practical impact of the change in the parole rule poses a significant risk of enlarging the amount of time a prisoner actually serves. Michael, 498 F.3d at 383 (citing Garner, 529 U.S. at 255).

Here, the Complaint does not allege that the statutory changes referenced by Plaintiff alter the definition of his crimes. Instead, it alleges that, since the time of Plaintiff's offenses in August of 1988, the state parole laws have been amended and Defendant has accordingly implemented changes in its decision-making criteria regarding which offenders are granted parole—all changes which, according to Plaintiff, have had the practical effect of enlarging his period of incarceration. The Complaint alleges that Tennessee law and parole board policy in August of 1988 gave the board discretion to consider victim statements; conversely, current policy mandates the board to receive and consider victim statements.[1] According to Plaintiff, this change "equates to a change in evidentiary standards and is not a procedural change."[2] (Doc. No. 1 at 17). In an effort to show how the new law and/or policy is disadvantageously affecting him, Plaintiff has submitted (1) a list of "case examples" in which first degree murder offenders with life sentences were

---

[1] Tennessee Code Annotated § 40-28-504(2) (effective Jan. 1, 1994) now requires the parole board "to receive and consider victim impact statements."
[2] The distinction between policy changes and statutory changes matters. "Internal parole guidelines 'are not "laws" for ex post facto purposes because the guidelines do not absolutely restrict parole officers' discretion.'" Michael v. Ghee, 411 F. Supp.2d 813 (N.D. Ohio 2006) (quoting Ruip v. United States, 555 F.2d 1331, 1335–36 (6th Cir. 1977)) (citations omitted); see also Berry v. Traughber, 48 F. App'x 483, 485 (6th Cir. 2002) ("The new policy is not a law subject to ex post facto analysis as it is more in the nature of a guideline for the Board to use in exercising it discretion and as Berry provided no evidence that the Board lacked the discretion to modify the policy.").

released on parole where there was no parole opposition and (2) nine affidavits from first degree murder offenders with life sentences, like Plaintiff, who have experienced parole opposition and have been denied parole. (Doc. No. 1 at 20-43).

It is Plaintiff's burden to "proffer actual evidence, rather than mere speculation, regarding the retroactive application's disadvantageous effect." Ritchie, 2012 WL 222923, at *5 (citing Dyer, 465 F.3d at 284). Likewise, Plaintiff must show that the risk is attributable to statutory changes to the parole process and not to a change in the way the board legitimately exercises its discretion. See Foster, 595 F.3d at 362 (6th Cir. 2010). Although Plaintiff has not fully developed his argument and evidence at this time, for the purpose of this initial screening, the Court finds that Plaintiff has a stated a non-frivolous claim that the changes at issue could effectively increase the sentence imposed for his crimes in violation of the Ex Post Facto Clause.

It is true that Plaintiff does not have an inherent constitutionally created right to parole. Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). And, the Tennessee parole scheme does not create an expectation that parole will be granted that is sufficient to trigger a constitutionally protected liberty interest. Wright v. Trammell, 810 F.2d 589, 590–91 (6th Cir. 1987). Nevertheless, parole provisions that alter the level of board discretion, as these appear to do, may rise to the magnitude of an ex post facto violation. See United States v. Duane, 533 F.3d 441, 447 (6th Cir. 2008) ("'the [Supreme Court has] made clear that guidelines that affect discretion, rather than mandate outcomes, are nevertheless subject to ex post facto scrutiny'") (quoting Michael, 498 F.3d at 382; Garner, 529 U.S. at 253); see also, e.g., Sellmon v. Reilly, 551 F. Supp.2d 66, 88 (D.C. Cir. 2008) (holding that inmates established prima facie case of an ex post facto violation resulting from the retroactive application of the U.S. Parole Commission parole regimen, rather than the D.C. parole regimen, to their parole applications; however, only those inmates who

7

demonstrated that the practical effect of the new policies was to substantially increase the risk that they would each serve lengthier terms of incarceration were entitled to relief on their ex post facto claims).

The case of Seagroves v. Tennesseee Board of Probation & Parole, 86 F. App'x 45 (6th Cir. 2003), is relevant to the Court's analysis. In Seagrove, the Court considered an Ex Post Facto Clause challenge similar to the one raised by Plaintiff here. The Court found that the statutory changes at issue did not alter the definition of Seagroves's crimes and that, "given the seriousness of Seagroves's crime and the fact that Seagroves committed the triple murders and the assault with intent to commit murder *less than one week after being paroled for his previous crimes*, the likelihood of Seagroves's release under either statute [wa]s so remote as to create only 'the most speculative and attenuated possibility of increasing' Seagroves's punishment." Id. at 48 (emphasis in original). Therefore, the Court held that the statutory changes at issue in Seagroves's case did not create "a significant risk of increasing the measure of punishment attached to the covered crimes" so as to violate the Ex Post Facto Clause. Id. (citing Morales, 514 U.S. at 509).

Like in Seagroves, the changes at issue here have not altered the definition of Plaintiff's crimes. According to the Complaint, however, Plaintiff—unlike Seagrove—has been a model inmate for over thirty years. He has earned certificates in three vocational classes and is on his way to earning a fourth certificate. He has never received a single disciplinary report. Prior to committing the offenses for which he has been incarcerated at the age of sixteen, Plaintiff had no prior record. Unlike Mr. Seagroves, Plaintiff's likelihood of release on parole for showing rehabilitation is far from "the most speculative and attenuated." Id. Accordingly, Plaintiff's Ex Post Facto claim shall proceed for further development.

B. **Eighth Amendment Claim**

Next, the Complaint alleges Defendant has violated Plaintiff's rights under the Eighth Amendment to the United States Constitution by imposition of harsher punishment on Plaintiff, a juvenile offender, than similarly-situated adult offenders. According to the Complaint, "[t]he Board has not cited any reason, explanation, or justification as to why Plaintiff is unsuitable for parole reason as a juvenile offender when adult offenders with more egregious offenses, including double first degree murder I convictions, with significantly less time in prison and seriously flawed prison records are paroles [sic] at their initial parole hearings." (Doc. No. 1 at 14). In support of this assertion, Plaintiff includes a chart listing inmate names, time served, case citations, and the facts of their cases. (Doc. No. 1, Exh. 2 at 21-23). This argument primarily advances an Equal Protection claim, which the Court addresses in the next section.

However, to the extent that the Complaint attempts to allege that Defendant's policies, procedures, and customs violate the Constitutional prohibition against cruel and unusual punishment because they do not provide him, a juvenile offender, with a meaningful opportunity for release, such allegations may also state a colorable § 1983 claim under the Eighth Amendment. In a series of cases beginning in 2010, the United States Supreme Court held that defendants who were juveniles when they committed the crimes for which they are incarcerated may be subject to certain protections under the Eighth Amendment. In Graham v. Florida, 560 U.S. 48 (2010), the Supreme Court held the Eighth Amendment prohibits the imposition of a life sentence without parole for nonhomicide offenses committed by juvenile offenders. Id. at 74. Two years later, in Miller v. Alabama, 567 U.S. 460 (2012), the Supreme Court held that a sentence of mandatory life without parole for juvenile homicide offenders also violates the Eighth Amendment. Id. at 479-80. In 2016, in Montgomery v. Louisiana, 136 S. Ct. 718 (2016), the Supreme Court clarified that

9

Miller's holding "announced a substantive law rule of Constitutional law" that applies retroactively. 136 S. Ct. at 736.

The Supreme Court explained that this line of precedent was premised on the rationale that "children are different." Miller, 567 U.S. at 481. "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." Graham, 560 U.S. at 68. The Court further explained:

> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity.

Miller, 567 U.S. at 471 (quotation marks and citations omitted). The court observed that youth "is a time of immaturity, irresponsibility, impetuousness, and recklessness[,]" a "moment and condition of life when a person may be most susceptible to influence and to psychological damage." Id. at 476 (quotation marks and citation omitted). Furthermore, "[p]arts of the brain involved in behavior control continue to mature through late adolescence." Graham, 560 U.S. at 68. The court relied on studies which have shown that "only a relatively small proportion of adolescents who engage in illegal activity develop entrenched patterns of problem behavior." Miller, 567 U.S. at 471 (quotation marks and citation omitted). In so doing, the court determined the actions of a juvenile "are less likely to be evidence of irretrievably depraved character than are the actions of adults." Graham, 560 U.S. at 68 (quotation marks and citation omitted).

Following these cases, in Wershe v. Combs, No. 1:12-CV-1375, 2016 WL 1253036 (W.D. Mich. Mar. 31, 2016), a state prisoner serving a paroleable life sentence for drug crimes he committed at age seventeen sued two parole board members, asserting that they violated his rights

under the Eighth Amendment and the Due Process Clause. Id. at *1. On initial review, the district court dismissed the Complaint, and the plaintiff appealed. The Sixth Circuit affirmed the dismissal of the plaintiff's due process claim, but vacated the dismissal of the plaintiff's Eighth Amendment claim and remanded for the court to consider the impact of Graham. Id. Although the court's decision on remand ultimately was unfavorable for the plaintiff, the court noted that it could not "say with certainty that Graham does not apply to [the plaintiff] merely because his sentence is technically one that gives him the possibility of parole." Id. at *3. The court noted that Graham's "discussion of a meaningful opportunity to obtain release . . . suggests that the decision imposes some requirements after sentencing as well." Id.

The following year, in Maryland Restorative Justice Initiative v. Larry Hogan, No. ELH-16-1021, 2017 WL 467731 (D. Md. Feb. 3, 2017), prisoner-plaintiffs alleged that Graham, Miller, and Montgomery apply to parole proceedings and that the defendants, in practice, operated a system of clemency that denied juvenile lifers a meaningful opportunity for release. The court held that, in the absence of "permanent incorrigibility," the rationale of Graham, Miller, and Montgomery applies to juvenile offenders sentenced to life with parole for a homicide offense. Id. at *24. In denying the defendants' motion to dismiss, the court found that the plaintiffs had sufficiently alleged that Maryland's parole system operated as a system where the opportunities for release were "remote," instead of "meaningful" and "realistic," as required by Graham. Id. at *27; see also Hayden v. Keller, 134 F. Supp.3d 1000, 1009 (E.D. N.C. 2015) ("If a juvenile offender's life sentence, while ostensibly labeled as one 'with parole,' is the functional equivalent of a life sentence without parole, then the State has denied that offender the 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' that the Eighth Amendment demands."); Greiman v. Hodges, 79 F. Supp. 3d 933, 945 (S.D. Iowa 2015)

("[A]lthough Graham stops short of guaranteeing parole, it does provide the juvenile offender with substantially more than a possibility of parole or a 'mere hope' of parole; it creates a categorical entitlement to 'demonstrate maturity and reform,' to show that 'he is fit to rejoin society,' and to have a 'meaningful opportunity for release.'").

Based on this line of cases, Plaintiff may be able to state a similar Eighth Amendment claim and, under the circumstances set forth in the Complaint, the Court determines that it is appropriate to grant Plaintiff the opportunity to amend his Complaint to more fully articulate this claim. See, e.g., Greiman, 79 F. Supp.3d at 943 ("The Court cannot conclude as a matter of law at this early stage of the proceedings that the [parole board's] parole review procedures either are or are not compliant with the constitutional mandate of Graham when applied to juveniles"); Hill v. Snyder, No. 10-14568, 2011 WL 2788205, at *6 (E.D. Mich. July 15, 2011) ("Graham and Roper do not compel the conclusion that Plaintiffs' Eighth Amendment claims must fail as a matter of law, particularly at this early stage of the proceedings . . . The full Eighth Amendment analysis required by Graham involves the presentation of evidence that is not yet before the court on this Rule 12(b)(6) motion."); Cf. Wershe, 763 F.3d at 506 (vacating district court's dismissal of Eighth Amendment claim, "[g]iven the novelty of Wershe's claim and the fact that the parties have not had an opportunity to present briefing."). Accordingly, this claim is not subject to dismissal at this time.

### C. Equal Protection Claims

Finally, the Complaint alleges that Defendant has violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by the discriminatory treatment, denial of parole, and prolonged period of imprisonment the parole board has imposed on Plaintiff as a juvenile offender and an offender with victim's family parole

opposition. "The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." Shabazz v. Schofield, No. 3:13-cv-00091, 2013 WL 704408, at *19 (M.D. Tenn. Feb. 26, 2013) (quoting U.S. Const., amend. XIV). A plaintiff states a colorable equal protection claim by alleging that the state is "mak[ing] distinctions that 1) burden a fundamental right; 2) target a suspect class; or 3) intentionally treat one individual differently from others similarly situated without any rational basis." Taylor Acquisitions, L.L.C. v. City of Taylor, 313 App'x 826, 836 (6th Cir. 2009) (citing Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005)). Stated differently, "in order to establish an equal protection claim, the plaintiff must show that similarly situated inmates received different, more favorable treatment than he, and that the difference in treatment was due to purposeful discrimination against him." Henderson v. Bredesen, No. 3:04-0043, 2005 WL 2230033, at *2 (M.D. Tenn. Aug. 9, 2005).

"'[P]risoners are not considered a suspect class for purposes of equal protection litigation.'" Michael, 498 F.3d at 379 (quoting Jackson v. Jamrog, 411 F.3d 615, 618 (6th Cir. 2005)). Here, however, Plaintiff is not seeking a strict scrutiny analysis. The Complaint advances two theories of recovery under the Equal Protection Clause: that Plaintiff was intentionally treated differently than other incarcerated parolees, without any rational basis, because (1) he is a juvenile offender and (2) there is victim opposition to his parole. Plaintiff has attached to the Complaint a list of persons whose parole decisions he alleges were similar in all relevant aspects to his but who were treated differently, as well as affidavits from several individuals attesting that they have been treated differently for parole purpose because they have victim opposition. (Doc. No. 1 at 21-43). "To be considered similarly situated, a plaintiff is required to show similarity in all relevant aspects

of the parole decision." Clayborn v. Tenn., No. 11-2137, 2013 WL 530555, at *5 (W.D. Tenn. Feb. 11, 2013) (citation and internal quotation marks omitted); see also Drumbarger v. Crosby, No. 3:11-CV-0684, 2014 WL 5846371, at *13 (M.D. Tenn. Nov. 12, 2014) (on dispositive motion review, finding that plaintiff had not shown that the two inmates to whom he referred were similarly situated in all relevant aspects and, as such, plaintiff could not use their paroles to support his own equal protection claim). In short, if a plaintiff claims that he has been intentionally treated differently from others similarly situated, he must show similarity in all material respects, which in the case at hand would include "all relevant aspects of the parole decision." Clayborn, 2013WL 530555, at *5.

"Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" Michael, 498 at 379 (quoting Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir. 2005)). The plaintiff bears the burden of demonstrating that the government lacks a rational basis, and the plaintiff may satisfy this burden "'either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" Davis v. Prison Health Servs., 679 F.3d 433, 438 (6th Cir. 2012) (quoting Warren, 411 F.3d at 711). The state bears no burden of proof, and its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" Michael, 498 F.3d at 379 (quoting TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 790 (6th Cir. 2005)). A plaintiff, then, may claim an equal protection violation where he is discriminated against because of his membership in a class that is not "suspect" or "protected," though in that case "the plaintiff's class 'merits constitutional protection only insofar as the state actor could have had no

14

conceivable rational basis for distinguishing it.'" Hawkins v. Tenn. Bd. of Prob. and Paroles, No. 07-2326-B/P, 2007 WL 1574241, at *5 (W.D. Tenn. May 29, 2007) (quoting Purisch v. Tenn. Tech. Univ., 76 F.3d 1414, 1424 (6th Cir. 1996)).

Here, the Complaint alleges intentional disparate treatment, without a rational basis, among the population of murder 1-life sentenced inmates seeking parole. The Complaint alleges that Defendant has adopted "a practice of generally requiring longer prison terms for murder 1-life sentenced offenders, including Plaintiff, who have victim related opposition for parole" and "a practice and policy of generally requiring longer prison terms for murder1- life sentenced juvenile offenders as compared to similarly situated adult offenders." (Doc. No. 1 at 16-17). Construing the Complaint liberally and in the light most favorable to Plaintiff, as the Court must at this screening stage, the Court finds that these allegations state colorable equal protection claims. See Valentine v. Ford, No. 1:18-cv-00021, 2018 WL 3496637, at **5-6 (M.D. Tenn. July 20, 2018) (finding that prisoner-plaintiff stated a colorable equal protection claim under § 1983 based on alleged parole disparities). This claim will therefore be permitted to proceed.

## V. Conclusion

Having conducted the review required by the PLRA, the Court finds that the Complaint states colorable Ex Post Facto and Equal Protection claims under § 1983. These claims will proceed for further development.

Plaintiff shall be permitted to amend the Complaint, within a reasonable time as determined by the Magistrate Judge, to allege that Defendant's policies, procedures, and customs violate the Eighth Amendment's prohibition against cruel and unusual punishment because they do not provide Plaintiff, a juvenile offender, with a meaningful opportunity for release.

The Clerk will appoint counsel for Plaintiff from the civil pro bono panel.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE