# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CHAD SWATZELL, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:18-cv-01336 |
| TENNESSEE BOARD OF PAROLE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Chad Swatzell, an inmate of the Tennessee Department of Correction, brings this action under 42 U.S.C. § 1983 against the Tennessee Board of Parole (the "Board"). He argues that the Board has repeatedly denied him parole in violation of the Eighth and Fourteenth Amendments, as well as his rights under the Ex Post Facto Clause of the Constitution, by: (1) denying him parole due to the "seriousness" of his offense of conviction even though he was a juvenile at the time and despite his subsequent rehabilitation; (2) considering his juvenile age at the time of the offense as an aggravating rather than mitigating factor; and (3) applying the parole release standards after the date of his offense. The Board counters that Tennessee law and its own guidelines afford it broad discretion to deny parole. The parties' cross-motions for summary judgment are ripe for decision. (Doc. Nos. 84, 85, 86, 88, 89, 90, 94, 95, 100, 101, 103, 104, 105, 106, 107). For the following reasons, the Board's motion will be granted, and Swatzell's motion will be denied.

## I. BACKGROUND[1]

Swatzell is serving a life sentence with the possibility of parole for first degree murder committed on August 29, 1988, when he was sixteen years old. (Doc. No. 101 ¶¶ 1, 3; see also Doc. No. 104 ¶ 1). He became eligible for parole in 2013 after serving 25 years in prison. (Doc. No. 101 ¶ 9). His parole file reflects that he committed the offense as a juvenile, has had no prison disciplinary infractions, and has completed educational, religious and vocational programming. (See id. ¶¶ 21, 23–24, 28, 31–33).

Swatzell has made multiple requests for parole. At his first parole hearing in July 2013, the Board continued the hearing to allow Swatzell to receive a psychological evaluation. (Id. ¶ 12). At Swatzell's second parole hearing in November 2013, the Board again continued the hearing to conduct further evaluation, including to "verify and approve a release plan to include a plan for mental health treatment." (Id. ¶ 13). In 2014, at his third parole hearing, the Board denied parole due to the "seriousness of the offense" under Tenn. Code Ann. § 40-35-503(b)(2) ("Section 503(b)(2)") (Doc. No. 101 ¶¶ 4–5; see also Doc. No. 104 ¶ 14). The Board again denied parole due to the "seriousness of the offense" at his fourth parole hearing, in 2016. (Doc. No. 101 ¶ 6; see also Doc. No. 104 ¶¶ 11, 25–26, 30). In April 2020, the Board continued Swatzell's next parole hearing because it failed to reach the four-vote threshold required by Tennessee law to either grant or deny parole for a person convicted of murder. (Doc. No. 104 ¶ 15). On June 29, 2020, the fourth vote was cast to deny parole, again due to the "seriousness of the offense." (Id. ¶¶ 16–18, 25).

More recently, the Board denied parole based on the "seriousness of the offense" at Swatzell's fifth and sixth parole hearings. (Id. ¶¶ 27, 30–31). At Swatzell's fifth parole hearing on August 3, 2020, presiding hearing officer Mae Beavers noted that "I know it's been argued that

---

[1] The Court draws the undisputed facts from the parties' responses to the Statements of Undisputed Facts. (Doc. Nos. 85, 90, 95, 101, 104, 106).

you were only 16 at the time, but I'm really less concerned about the age at the time then [sic] I am the seriousness of the crime and the viciousness of the attack." (Id. ¶ 28; see also Doc. No. 91-12, Tr. of Aug. 3, 2020, Parole Review Hearing at 33:21–22). At Swatzell's sixth hearing, Board member Zane Duncan lauded Swatzell's lack of disciplinary infractions. (Doc. No. 104 ¶¶ 31–32). Specifically, Duncan said "you've had zero write-up[s] since you've been incarcerated, so I commend you for that. That's something we don't often see." (Id. ¶ 31). Duncan also discussed Swatzell's "extensive vocational training during his incarceration." (Id.; see also Doc. No. 91-12 at 30:1–15). Nonetheless, Duncan decided, along with other Board members, to deny parole due to the "seriousness of the offense." He clarified that, "I do understand that these are tough cases where crimes are committed as a juvenile, and the Board does take those into consideration in making our decision . . . [but] that does not depreciate the seriousness of the offense whatsoever." (Doc. No. 104 ¶¶ 32–33; see also Doc. No. 91-5, Tr. of Jan. 13, 2021, Parole Review Hearing at 35:8–15). Swatzell's next parole hearing is scheduled for July 2022. (Doc. No. 104 ¶ 34).

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Griffith v. Franklin Cty., 975 F.3d 554, 566 (6th Cir. 2020) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element

3

of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "And where, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016) (quoting Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson, 477 U.S. at 249.

### III. PAROLE STATUTORY SCHEME

Swatzell's legal claims are grounded in the parole statutory framework. The Tennessee General Assembly authorizes the Board to grant parole to any inmate with a felony sentence of more than two (2) years. Tenn. Code Ann. § 40-35-503(a). While the Board has sole discretion regarding parole decisions, State ex rel. Ivey v. Meadows, 216 Tenn. 678, 685 (Tenn. 1965) (noting that "the decision to grant parole [lies] in the complete discretion of the Board"), the Legislature has established boundaries and considerations to guide the Board's exercise of its discretion. In Tenn. Code Ann. § 40-28-117(a), the Legislature told the Board that:

> Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that the prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.

Tenn. Code Ann. § 117(a).

Then, in Tenn. Code Ann. § 40-35-503(b), the Legislature reiterates that "parole is a privilege and not a right" and creates a fence within which the Board shall exercise its discretion in Tenn. Code Ann. § 40-35-503(b)(2). There, the Legislature makes clear what the Board may and may not do. As pertinent here, the sub-section reads:

> (A) The release from custody at the time would depreciate the seriousness of the crime in which the incarcerated individual stands convicted or promote disrespect for the law, except that the board's finding shall not be the sole basis for denying parole unless the individual is serving a sentence for any of the following offenses, in which case the board may deny parole for seriousness of the offense:
>
> (i) First degree murder or an attempt to commit, solicitation of, or facilitation of first-degree murder;
>
> \*\*\*
>
> (B) If the board denies parole for the seriousness of the offense, then the board shall state in writing how the inmate can improve the inmate's chances of being released on parole at the inmate's next hearing.
>
> (3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or
>
> (4) The incarcerated individual's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the incarcerated individual's capacity to lead a law-abiding life when given release status at a later time.
>
> \*\*\*
>
> (g) In determining whether an inmate should be granted parole, the board shall consider as a factor the extent to which the inmate has attempted to improve the inmate's educational, vocational or employment skills through available depart of correction programs while the inmate was incarcerated.
>
> \*\*\*

Tenn. Code Ann. 40-35-503(b)(2)(A) and (B).

From the statutory grant of authority to the Board, the framework in which the Board must exercise its discretion is apparent. First, an inmate's good conduct and performance while in custody is only a consideration and does not alone entitle an inmate to parole. Second, parole is a

5

privilege deserving to only those inmates that the Board believes "there is reasonable probability" will not violate the law when released or compromise the public safety. Tenn. Code Ann. § 40-28-117(a); Id. § 40-35-503(b). Third, the Board generally may not deny parole based solely on the "seriousness of the crime" of conviction, without consideration of other factors, unless the crime of conviction is "first-degree murder." Id. § 40-35-503(b)(2)(A)(i). If it does so, then the Board must "state in writing" what the inmate needs to do to "improve the inmate's chance" for parole in the future. Id. § 40-35-503(b)(2)(B). The Board's written statement on how an inmate with a first-degree murder conviction could be paroled would, of necessity, be based on the other considerations in Tenn. Code Ann. § 40-35-503(b)(2).

The Board has adopted the Tennessee Parole Release Decision Making Guidelines (June 2021) that amplify its statutory grant of authority. (Doc. No. 91-11). The Board applies the guidelines to assist . . . in the exercise of its discretion and to give proper consideration of the information surrounding each case." (Id. at 2). They "also provide a set of suggested release decision making criteria for board members and staff to consider so that release decisions are made in a consistent, fair and equitable manner." (Id.). Specifically, the 2018, 2019, and 2021 guidelines make clear that an inmate's age at the time of an offense may be "considered (by the Board) as mitigating or aggravating considerations . . . in case decision making." (Doc. No. 104 ¶ 24; see also Tenn. Parole Release Decision Making Guidelines 2018, 2019, and 2021, Doc. Nos. 91-9 at 8, 91-10 at 8, 91-11 at 8). The same is true when the Board considers whether the circumstances surrounding the offense, such as "bodily injury," "use of a deadly weapon," "victim injury," and "cruelty to victims." (Doc. No. 91-11 at 9).

## IV. ANALYSIS OF LEGAL CLAIMS

### A. Eighth Amendment

Swatzell's Eighth Amendment claims rely on a series of Supreme Court cases – starting with Roper v. Simmons, 543 U.S. 551 (2005), then developing in Graham v. Florida, 560 U.S. 48 (2010), Miller v. Alabama, 567 U.S. 460 (2012), and Montgomery v. Louisiana, 577 U.S. 190 (2016) – all in the context of sentencing juveniles to the death penalty or life without parole. Those cases have established that when such a sentence is imposed, the inmate must be afforded "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, 560 U.S. at 75. Invoking these cases, Swatzell brings an as-applied challenge under the Eighth Amendment. See Green Party of Tenn. v. Hargett, 791 F.3d 684, 691–92 (6th Cir. 2015) (noting that "an as-applied challenge argues that a law is unconstitutional as enforced against the plaintiff[] before the court.") (citations and quotations omitted). Specifically, Swatzell argues that Section 503(b)(2), as applied him to him, violates the Eighth Amendment's "meaningful opportunity" requirement because it compels the Board to deny parole due to the seriousness of the offense for those convicted of first-degree murder. (See Doc. No. 89 at 14-17). It is unclear whether Roper and its progeny even applies to either the denial of parole, Carnes v. Engler, 76 F. App'x 79, 81 (6th Cir. 2003) (finding that "denial of [a plaintiff's] parole does not implicate the Eighth Amendment's prohibition against cruel and unusual punishment"); but see Hill v. Whitmer, No. 10-14568, 2020 WL 2849969, at *4 (E.D. Mich. June 2, 2022) (applying Roper line of cases to inmate sentenced to life without parole as a juvenile) or to a juvenile offender sentenced to life with the possibility of parole. Starks v. Easterling, 659 F. App'x 277, 280–81 (6th Cir. 2016) (refusing to extend Miller to juveniles sentenced to life with parole "[b]ecause the Supreme Court

7

has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life" without parole). [2]

However, even assuming Swatzell's case fits within the ambit of the Supreme Court's Eighth Amendment juvenile sentencing jurisprudence, his arguments fail because the Board has broad statutory discretion to consider a multitude of factors, including but not limited to the age of the inmate at the time of the offense, that gives the inmate a full opportunity to show rehabilitation and maturity. The record here, when viewed in the light most favorable to Swatzell, establishes that the Board plainly provided Swatzell such an opportunity.

Initially, the Court disagrees with Swatzell that Section 503(b)(2) requires that parole be denied solely because Swatzell was convicted of first-degree murder. To the contrary, Section 503(b)(2) allows the Board to rely solely upon "seriousness of the offense" if, after applying the other considerations in the section the Board concludes that parole should be denied. See Tenn. Code Ann. § 40-35-503(b)(2). There is no mandatory legislative directive that all inmates

---

[2] Although federal courts have not directly weighed in, several state supreme courts have concluded that parole eligibility itself constitutes a "meaningful opportunity" for a juvenile offender's release. See Pedroza v. State, 291 So.3d 541, 549 (Fla. 2020) (finding that a 40-year sentence with release eligibility at age 55 for a juvenile offender did not violate the Eighth Amendment); State v. Steele, 915 N.W.2d 560, 618, 626 (Neb. 2018) (holding that a 50-year sentence with release eligibility at age 67 for a juvenile offender provided a "meaningful and realistic opportunity to obtain release"); Ira v. Janecka, 419 P.3d 161, 169 (N.M. 2018) (holding that possibility of parole at age 62 for crimes committed by a juvenile offender provided a "meaningful and realistic opportunity to obtain release"); State v. Charles, 892 N.W.2d 915, 921 (S.D. 2017) (holding that a 92-year sentence with possibility of parole at age 60 imposed on a juvenile offender does not "guarantee[] he will die in prison without any meaningful opportunity to obtain release."); Angel v. Commonwealth, 704 S.E.2d 386, 402 (Va. 2011) (holding that three consecutive life-term sentences for a juvenile offender was not cruel and unusual punishment because Virginia's conditional release statute provided a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation at age 60); Davis v. State, 472 P.3d 1030, 1033–34 (Wyo. 2020) (holding that 42-year sentence with parole eligibility at age 60 for a juvenile offender was constitutional). Although many of these state court cases discuss lengthy term-of-years sentences rather than explicit life sentences, their logic is persuasive, and they accurately discuss the Supreme Court's "meaningful opportunity" requirement. See Graham, 560 U.S. at 75.

convicted of first-degree murder must be or shall be denied parole. This is made abundantly clear in the legislative command that the Board "shall state in writing" how an inmate convicted of first-degree murder can successfully receive parole at a future hearing. Id. § 40-35-503(b)(2)(B).

Turning to the other considerations that guide the Board's discretion, it is clear that the Board was aware of Swatzell's successful completion of "educational, vocational and religious programs" as well as his spotless disciplinary record. Id. § 40-35-503(g). And it applied this mitigating evidence as its guidelines permit, to assess his institutional behavior (i.e., lack of disciplinary infractions) and institutional program participation in determining whether to grant or deny parole. (Doc. No. 91-11 at 6–7). Indeed, the Board was aware that Swatzell had participated in at least a half dozen vocational courses, including those in "landscaping, masonry, culinary arts, carpentry, career management, and electrical repair." (Doc. No. 104 ¶ 8). Further, at Swatzell's January 13, 2021, parole hearing, Board member Duncan specifically praised Swatzell's lack of disciplinary infractions and rehabilitation efforts. He noted that Swatzell has "had zero write-up[s]" while in custody and he commended him for that accomplishment. (Id. ¶ 31). Likewise, he applauded Swatzell's "extensive vocational training during his incarceration." (Id.; see also Doc. No. 91-12 at 30:1–15). Clearly, Swatzell not only had "a chance to demonstrate maturity and reform," Graham, 560 U.S. at 75, he in fact did so.

And the record further establishes that the Board was able to consider, and did consider, Swatzell's age at the time of the offense. (See Doc. No. 104 ¶ 24; see also Doc. Nos. 91-3, 91-9, 91-10, 91-11, 93-3, 104 ¶ 23). Beavers and Duncan, in voting to deny parole, explicitly referenced his age at the time of the offense. (See Doc. No. 104 ¶¶ 28, 31–33; see also Doc. No. 91-12 at 33:21–22; Doc. No. 91-5 at 35:8–15).

The Board gave substantial weight to the seriousness of the offense for good reason - Swatzell's offense was serious. The Tennessee Court of Criminal Appeals described it:

> On the day of this offense [Swatzell] went to school as usual, but during the morning, decided to skip school for the remainder of the day and went home, where he picked up two rifles, loaded them and started driving south from his home in Princeton, Kentucky. He became lost somewhere south of Hopkinsville, Kentucky, but continued to drive around until the early afternoon when his car started to malfunction, whereupon he pulled into the driveway of a home along the highway in Perry County. There was a woman in the garage as she walked from his car toward the house. He shot the woman in the leg without any provocation whatsoever as he approached the garage. He continued to shoot her as he approached her lying on the garage floor. He shot her twice in the face and head from some distance and finally shot her a fourth time—this time in the brain at very close range and while she was still alive, according to the medical examiner. He thereupon searched the house for anyone who might be present, but the woman was home alone.

State v. Swatzell, No. 01-C-019005CC00126, 1992 WL 25008, at *2 (Tenn. Ct. Crim. App. Feb. 14, 1992). After considering Swatzell's mitigating factors, the Board exercised its discretion and decided to deny parole because: (1) "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted"; and (2) "continued correctional treatment . . . will substantially enhance [Swatzell's] capacity to lead a law-abiding life when given release status at a later time." (Doc. No. 93-1 at 8). This rationale comports with the plain language of Section 503(b)(2)(B), which requires the Board to "state in writing how the inmate can improve the inmate's chances of being released on parole at the inmate's next hearing." Tenn. Code Ann. § 40-35-503(b)(2)(B).

In sum, even though the Board voted to deny parole due to the seriousness of the offense, it afforded Swatzell a "meaningful opportunity" to obtain release by also considering his age at the time of the offense as well as his maturity and rehabilitation efforts, as required by Sections 503(b)(2) and (g). (See Doc. No. 101 ¶¶ 4–5; see also id. ¶¶ 11, 25–26, 30). The Board's decision to deny parole based on the "seriousness of the offense" stemmed from its discretion to do so, not

10

Case 3:18-cv-01336   Document 120   Filed 01/21/22   Page 10 of 18 PageID #: 1501

because Section 503(b)(2), as applied to Swatzell, unconstitutionally required that result. Based upon this record, the Court cannot meddle with the Board's exercise of its discretionary authority to assess an inmate's fact-intensive situation for parole. See Wershe v. Combs, No. 1:12-CV-1375, 2016 WL 1253036, at *4 (W.D. Mich. Mar. 31, 2016) (finding that "Graham does not allow courts to undertake a full review of the State's parole procedures and substitute its own judgment"). The Board is therefore entitled to summary judgment on Swatzell's claim for a violation of the Eighth Amendment.

B.  Equal Protection

Swatzell's denial of equal protection claim rests upon how the Board weighed his juvenile status at the time of his offense when it considered his request for parole. (Doc. No. 100 at 20–21). He contends that by failing to apply his age at the time of the offense as a mitigating factor, as the Roper line of cases dictate, the Board used his age as an aggravating factor to deny him parole. (Id.; see also Doc. No. 94 at 17–21). This, Swatzell believes, subjected him to an arbitrary, higher standard to receive parole and denies him equal protection of the laws. (Doc. No. 94 at 17–21; see also Doc. No. 100 at 20-21).

The Equal Protection Clause of the Fourteenth Amendment directs states to treat "all persons similarly situated . . . alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish an equal protection claim, a plaintiff must prove that the state is "mak[ing] distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." Taylor Acquisitions, L.L.C. v. City of Taylor, 313 F. App'x 826, 836 (6th Cir. 2009) (citing Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005)). In the context of a parole decision, an inmate must show that he was treated differently from similarly situated prisoners without a

11

rational basis for its parole decision. See McGinnis v. Royster, 410 U.S 263, 269–70 (1973); see also Vill. of Willowbrok v. Olech, 528 U.S. 562, 564 (2000); Jackson v. Jamrog, 411 F.3d 615, 618 (6th Cir. 2005) ("Prisoners are not considered a suspect class for purposes of equal protection litigation," and therefore are not entitled to strict scrutiny."); Michael v. Ghee, 498 F.3d 372, 379 (6th Cir. 2007).

Under rational basis review, the Board's parole decision rises to a constitutional violation only if it "is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir. 2005). The inmate bears "the burden of demonstrating that the [Board] lacks a rational basis, and [he] may satisfy this burden either by negating 'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" Michael, 498 F.3d at 379 (quoting Warren, 411 F.3d at 710). Conversely, the parole board "bears no burden of proof; its [decision] is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" Id. (citing TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 790 (6th Cir. 2005)).

Swatzell has failed to present sufficient evidence to proceed to trial that he has been treated differently than similarly situated inmates. His evidence that "the Board has consistently evaluated [him] more harshly during his parole hearings simply because he was a child at the time of his offense," (Doc. No. 94 at 19), falls short. He cites handwritten notes on his 2013 parole summary report that "explicitly noted his age at the time of his offense," yet he was still scored a "medium risk" for parole. (Id.; see also Doc. No. 104 ¶¶ 20–21). He also believes that the Board gave too much weight to "inflammatory materials," such as a letter from the Tennessee Deputy District Attorney General, suggesting that Swatzell's offense was "more serious precisely because of his

youth." (Doc. No. 94 at 19; see also Doc. No. 104 ¶ 20). Finally, Swatzell relies upon a blank risk assessment form that gives more weight to younger ages for their "first adult/juvenile conviction," (See Doc. No. 22., Ex. A), as well as the Board's guidelines that allow it to consider age "at the time of the offense" as either a mitigating or aggravating factor. (Doc. No. 91-1 at 9). The record before the Court actually shows that no Board member "views Swatzell's age at the time of his offense as an aggravating factor when considering him for parole release." (Doc. Nos. 104-1, 104-2, 104-3, 104-4, 104-5, 104-6, 104-7). Further, the risk assessment form was not used at any of Swatzell's six parole hearings. (See O'Bryan Aff., Doc. No. 84-1 ¶ 2(d)).

In any case, Swatzell's equal protection argument overlooks that the statutory scheme gives the Board great latitude to make parole decisions based upon the record of each inmate. After all, as an inmate convicted of first-degree murder, Swatzell has no state or federal right to parole. The Board is required only to apply the standard in Tenn. Code Ann. § 40-35-503(b)(2)(A), as elaborated in its guidelines, to him. In doing so, it is the Board's responsibility to determine how much weight should be afforded to each factor, such as: age at the time of the offense, disciplinary history while in custody, seriousness of the crime, respect for the law, and an inmate's success or lack of success in vocational, educational or employment programing. Based upon the record before the Court, this Court cannot discern that the Board's decision to deny parole based on the seriousness of Swatzell's offense as a juvenile offender was irrational or based on animus. Indeed, the Sixth Circuit has found that denying parole due, in part, to the seriousness of the offense is rational. See Bell v. Anderson, 301 F. App'x 459, 462 (6th Cir. 2008) (noting that "denial of parole . . . premised on the parole board's concern that a contrary decision would 'demean the seriousness of the offense' of murder, [is] an altogether routine call by a parole board exercising discretionary authority"); see also Barker v. Conerly, No. Civ. 05CV74408DT, 2006 WL 305643, at *3 (E.D.

13

Mich. Feb. 9, 2006) ("It is permissible, however, for a parole board to deny an inmate release on parole because of the nature or severity of his criminal offense and sentence."); Young v. Tenn. Bd. of Probation and Paroles, No. 07-2327-B/P, 2007 WL 1574267, at *5 (W.D. Tenn. May 29, 2007) (noting that "Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board").

This Court's rationale is akin to that in Spencer v. Atterberry, where the inmate brought an equal protection claim arguing that the parole board relied on false information to deny his parole. No. 1:10-cv-735, 2011 WL 65866, at *7 (W.D. Mich. Jan. 10, 2011). The court dismissed the claim, finding that it failed to satisfy rational basis review because the parole board's decision to deny parole was discretionary and reasonably "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." Id. (citing Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 603 (2008)). As the Spencer Court noted in the discretionary parole context, "the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." Id. (citing Engquist, 553 U.S. at 603).

In sum, Swatzell fails to negate "every conceivable basis which might support" the Board's decision to deny parole or "'demonstrate that the challenged [decision] was motivated by animus or ill-will.'" Michael, 498 F.3d at 379 (quoting Warren, 411 F.3d at 710). Accordingly, the Board is entitled to summary judgment on Swatzell's claim for a violation of the Equal Protection Clause of the Fourteenth Amendment.

C. The Ex Post Facto Clause

Swatzell also challenges the Board's repeated decisions to deny parole as a violation of the Ex Post Facto Clause of the Constitution. He relies upon the Board's application of Tenn. Code

14

Ann. § 40-28-117 that became law on April 24, 1989, amending the prior statute at Tenn. Code Ann. § 40-3614, which was in effect on the date of his offense. (Doc. No. 94 at 21–22; see also 1989 Pub. Acts, c. 227, § 31).

Specifically, on the date of his offense in 1988, the parole release standard in Tenn. Code Ann. § 40-3614 read, in pertinent part:

> Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board shall so determine, such prisoner *shall* be allowed to go upon parole . . ..
> (emphasis added)

In 1989, one word was changed; "shall" became "may" such that it now reads:

> Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board so determines, the prisoner *may* be paroled . . ..

Tenn. Code Ann. § 40-28-117(a)(1) (emphasis added). Swatzell insists he is entitled to application of the statute as it existed on the date of his offense that requires he be granted parole. (Doc. No. 94 at 21–24).

Swatzell is correct that the Ex Post Facto Clause prohibits "retroactively alter[ing] the definitions of crimes or increas[ing] the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 41 (1990); see also U.S. Const. art. 1, § 10. "A criminal law violates the Ex Post Facto Clause if it (1) applies to events occurring before its enactment, and (2) disadvantages the offender affected by it." Hill v. Snyder, 878 F.3d 193, 211 (6th Cir. 2017) (citing United States v. Kruger, 838 F.3d 786, 790 (6th Cir. 2016)). Indeed, "[p]arole eligibility is part of the law annexed to an offense when committed; therefore[,] legislative action which constricts parole eligibility by

15

modifying requirements for such eligibility may violate the" Ex Post Facto Clause. Ritchie v. Tenn. Bd. of Prob. and Parole, No. 1:10-cv-203, 2012 WL 222923, at *3 (citing Weaver v. Graham, 450 U.S. 24, 32–33 (1981)). Where a statute does not facially reveal a "significant risk" of increasing the punishment, an inmate must show that the statute "created a significant risk of increased punishment." Garner v. Jones, 529 U.S. 244, 256 (2000). To establish that a statute "created a significant risk" in violation of the Ex Post Facto Clause, an inmate cannot rely on "speculative and attenuated possibilit[ies]." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 511 (1995)). Rather, an inmate must offer actual evidence. See id.; see also Teague v. Cox, No. 1:06-CV-91, 2008 WL 2518699, at *5 (E.D. Tenn. June 19, 2008) (requiring a prisoner "'to proffer actual evidence, rather than mere speculation, regarding the retroactive applications' disadvantageous effect") (quoting Dyer v. Bowlen, 465 F.3d 280, 285 (6th Cir. 2006)). In the parole context, the Ex Post Facto Clause is not always implicated, and courts "must examine the relevant law in effect at the time [the inmate']s offense was committed and compare it with the retroactively applied version of the law." Foster v. Booker, 595 F.3d 353, 362 (6th Cir. 2010).

There is no Ex Post Facto violation here for two reasons. First, the Board's discretion to grant or deny parole remains unchanged because the Board's statutory discretionary authority did not change. See id. (finding that where a parole board decides a matter within its discretion, "that could hardly amount to an ex post facto violation as long as it was within" the Board's discretion"); see also Smith v. Tenn. Bd. of Paroles, No. M201801354COAR3CV, 2019 WL 3335003, at *3–4 (Tenn. Ct. App. July 25, 2019) (finding that a change in the law had "no impact on the standards for determining suitability for parole, whose application is a matter of discretion vested in the Board"). In both versions, the standard guiding the exercise of the Board's discretion are the same – namely, whether "there is reasonable probability that if such prisoner is released he will live and

16

Case 3:18-cv-01336    Document 120    Filed 01/21/22    Page 16 of 18 PageID #: 1507

remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." See Tenn. Code Ann. §§ 40-3614; 40-28-117(a)(1). In making that decision, the Board considers the same factors and has the same responsibility to weigh each depending on the inmate's particular circumstances. Whether the Board "shall" grant parole or "may" grant parole all rests on whether the Board concludes that the inmate will or will not violate the law or be a risk to society in the future.

Second, even if "shall" and "may" as used in the two statutes had a meaningful legal distinction, Swatzell offers no admissible evidence that the change "created a significant risk" of increased punishment. Garner, 529 U.S. at 256. Here, Swatzell has not availed himself of the opportunity to "proffer actual evidence, rather than mere speculation, regarding the retroactive application's disadvantageous effect." Id. Instead, Swatzell insinuates in a conclusory fashion that the Board was required to parole him once it made its findings. (Doc. No. 94 at 22–23). This is precisely the conjectural argument that is insufficient. See Dyer, 465 F.3d at 285 ("The Supreme Court has refused to hold the retroactive application of parole laws unconstitutional where inmates' claims have been based on speculation or conjecture."). Swatzell has therefore failed to provide any type of evidence that would allow the Court to infer "that the retroactive law created a sufficient risk of increasing the measure of punishment attached to the covered crimes." Teague, 2008 WL 2518699, at *5 (quotations and citations omitted).

Accordingly, the Board is entitled to summary judgment on Swatzell's claim for a violation of the Ex Post Facto Clause.

## V. CONCLUSION

For the foregoing reasons, the Board's Motion for Summary Judgment (Doc. No. 84) will be granted, and Swatzell's Motion for Summary Judgment (Doc. No. 88) will be denied. The case will be dismissed with prejudice.

17

Case 3:18-cv-01336   Document 120   Filed 01/21/22   Page 17 of 18 PageID #: 1508

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE